1  CHRISTOPHER D. SULLIVAN (148083)
   QUENTIN ROBERTS (306687)
2  **DIAMOND McCARTHY LLP**
   150 California Street, Suite 2200
3  San Francisco, California 94111
   Telephone:   415-692-5200
4  Facsimile:   415-263-9200
   Email: csullivan@diamondmccarthy.com
5         quentin.roberts@diamondmccarthy.com

6  Special Counsel for Plaintiffs
   CECCHI GORI PICTURES and CECCHI
7  GORI USA, INC.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>CECCHI GORI PICTURES, a California corporation; CECCHI GORI USA, INC., a California corporation,<br><br>Debtor. | Bank. Case No.: 16-53499<br>(Jointly Administered with Case No. 16-53500)<br><br>Chapter 11<br><br>**COMPLAINT FOR:**<br><br>**(1) LEGAL MALPRACTICE; AND**<br><br>**(2) BREACH OF FIDUCIARY DUTY.** |
| CECCHI GORI PICTURES and CECCHI GORI USA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>BERLANDI NUSSBAUM & REITZAS LLP, and BRIAN BERLANDI<br><br>Defendant. | |

Plaintiffs CECCHI GORI PICTURES, a California corporation ("CGP"), and CECCHI GORI USA, INC., a California corporation ("CGUSA" and together with CGP, the "Debtors" or "Plaintiffs") hereby allege and complain against Defendants BERLANDI NUSSBAUM & REITZAS LLP, a New York law firm ("BNR"), and BRIAN BERLANDI, an individual ("Berlandi," collectively with BNR, ("Defendants")), as follows:

## INTRODUCTION

1. This action arises out of multiple breaches by Defendants of their duties of loyalty to their clients (the Debtors), breach of their fiduciary duty to their clients and former clients, legal malpractice, and significant damages resulting from such breaches and malpractice.

2. In summary, the Defendants represented the Debtors jointly with other clients, even though those other clients had interests clearly adverse to the Debtors' interests and it was inappropriate for the Defendants to attempt to simultaneously act on behalf of these conflicting interests. In connection with the joint representations at issue, the Defendants failed to: (a) fully disclose to the Debtors the possible effect of the conflicts between the Debtors and the Defendants' other clients, (b) obtain signed engagement letters from the Debtors defining the scope of the Defendants' various engagements, (c) obtain signed waivers of the actual conflicts between and among the Debtors and the Defendants' other clients, and (d) exercise independent professional judgment on behalf of the Debtors.

3. As a result of the above failures, and at a time when the Debtors were insolvent (or were soon to be rendered insolvent), the Defendants represented the Debtors who improperly transferred away substantially all of their assets in exchange for no consideration. This transfer was done for the benefit of the Defendants' other clients and greatly damaged the Debtors and, hence, their creditors. Even prior to such transfer (which took place in 2015), the Defendants improperly advised the Debtors and their purported sole shareholder in a joint engagement where no joint engagement letter was prepared, no waiver of conflicts between the Debtors and their owner was ever written (let alone signed), and the Defendants counseled the Debtors' shareholder to act in a manner that was directly adverse to the Debtors' interests.

4.       To add insult to injury, while the Defendants were representing the Debtors and their prior owner jointly, the Debtors shouldered the burden of paying the Defendants' fees, even though the Debtors' obtained no benefit from such representation.

## JURISDICTION AND VENUE

5.       On December 14, 2016, the Debtors filed a voluntary chapter 11 petition in this Court.

6.       This Court has subject matter jurisdiction over this action under 28 U.S.C. §1334(b) in that the action arises under, arises in and/or relates to Debtors' bankruptcy.

7.       This action is a core proceeding under 28 U.S.C. § 157(b)(2).

8.       This Court has personal jurisdiction over Berlandi and BNR. Berlandi and BNR represented Debtors and otherwise purposely directed their conduct and activities toward Debtors, which are organized under California law and headquartered in California, and the Defendants' conduct with regard to the Debtors are the subject of this action.

9.       Venue in this Court is proper under 28 U.S.C. § 1409(a)

10.      Debtors consent to entry of a final judgment by the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 7008 and Bankruptcy Local Rule 7008-1.

## PARTIES

11.      CGP and CGUSA are corporations incorporated under the laws of the State of California.

12.      Each of the Debtors filed a voluntary petition in this Court under Chapter 11 of Title 11 of the United States Code on December 14, 2016 (the "Petition Date").

13.      The Debtors continue to operate and manage their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the United States Bankruptcy Code (the "Bankruptcy Code").

14.      On December 15, 2016, the Court entered its order for the joint administration of the Debtors' bankruptcy cases ("Bankruptcy Cases"). No trustee or official creditors committee has been appointed in the Bankruptcy Cases.

15. Upon information and belief, Defendant Brian Berlandi is a citizen and resident of New York, has been admitted to practice law in the State of New York. Berlandi is a member or partner of BNR and in doing the things alleged herein was at all times acting on BNR's behalf.

16. Upon information and belief, BNR is a limited liability partnership registered in the State of New York doing business as a law firm in that state.

## GENERAL ALLEGATIONS

17. The Debtors were historically engaged in the production and development of motion pictures.

18. Until September 2016 the Debtors were controlled by Vittorio Cecchi Gori ("Gori") via his ownership and control of Nous S.r.l. ("Nous").

19. Gori was a former Italian film producer, businessman and politician. He was the President/Chairman of the Board of Directors and sole shareholder of Cecchi Gori Group Fin.Ma.Vi S.p.A ("FINMAVI").

20. On November 7, 2005, FINMAVI filed a bankruptcy petition before the Ordinary Court of Rome in Italy (the "Italian Court"). As part of the bankruptcy proceeding, Gori misrepresented to the Italian Court that the Debtors had no assets and there was no possibility that FINMAVI would recover any assets. At the time Gori made these false representations to the Italian Court, the Debtors had substantial assets in the form of real estate, a library of films and titles and future revenues from films such as the blockbusters *300* and *Seven*.

21. On October 23, 2006, FINMAVI was declared bankrupt and at the time had more than $927 million in debt.

22. In 2007, the Public Prosecutor of Rome charged Gori with the crime of bankruptcy fraud for participating in fraudulent transfers and conveyances of FINMAVI's assets. Among the fraudulent transfers that were the subject of the criminal charges were purported transfers from FINMAVI to one or both of the Debtors or Nous.

23. Gori was ultimately convicted of financial crimes in an Italian court.

24. As a result of Gori's misconduct, the Italian court placed Nous in a judicial liquidation proceeding, subject to the oversight of two court-appointed liquidators: Davide Franco

and Sergio Torri. The liquidators have since proceeded to liquidate assets of Nous in an effort to repay debts owed to its creditors, including FINMAVI.

25. In their effort to recover assets, the co-liquidators commenced judicial proceedings in the United States to obtain control and complete ownership of the Debtors. They filed an action in the California Superior Court for Los Angeles County (the "California Court"), styled as *Nous S.r.l., Davide Franco, and Sergio Torri vs. Cecchi Gori Pictures, Cecchi Gori USA, Inc. Vittorio Cecchi Gori*, Case No. BC466028 (the "Nous Action"), seeking declaratory relief, recognition of foreign country judgment, and appointment of receiver.

26. On January 11, 2013, the California Court issued in the Nous Action its *Order Granting Plaintiff's Ex Parte Application For Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction* (the "TRO").[1]

27. The TRO, among other things, enjoined Gori and "anyone acting in concert with him" from "withdrawing, transferring, dissipating, using or otherwise disposing of any funds or assets of the [Debtors.]"

28. By its express terms and the terms of a subsequent stipulation, the TRO was to remain in effect "until Plaintiffs' application for a preliminary injunction is resolved." It was not until entry of a final judgment in favor of Nous in September 2016 that the application for preliminary injunction was resolved.

29. The Defendants were aware of the existence of the TRO and its applicability to Gori and the Debtors. During the Defendants' representation of the Debtors, they also became aware that there were various proceedings occurring in Italy against Gori and that Nous, through the liquidators, seeking to gain control of the Debtors from Gori.

30. The Defendants were aware of the seriousness of the criminal charges against Gori and the allegations that he had fraudulently directed the transfer of assets for his personal benefit and at the expense of his entities and the creditors of his entities.

31. Gabrielle Israilovici ("Israilovici") was a close friend, advisor and long-time confidant of Gori.

---

[1] A copy of the TRO is attached hereto as Exhibit A.

32. Starting in the summer of 2013 the Debtors retained Defendants to assist them with their general corporate needs, selling scripts and film making rights for various movie scripts owned by the Debtors, drafting agreements, and performing work related to the intellectual property rights of Debtors in the scripts and movie projects, and for follow up agreements with potential buyers related to the sales of rights for movie scripts.

33. Defendants maintain their office in New York, Berlandi is an attorney licensed to practice in New York, Berlandi performed the legal services alleged herein in New York, and Berlandi and BNR are bound by the professional responsibility standards of New York.

34. The Debtors and BNR did not enter into a written engagement letter in connection with the work described above.

35. The Defendants presented a proposed form of engagement agreement to the Debtors in January 2014. The proposed letter, signed by BNR, provided that "it cannot become effective . . . until this [engagement agreement] has been signed and returned." The Debtors did not sign the engagement agreement or return it to BNR.

36. From mid-2013 until at least the spring of 2015, the Defendants performed legal services for the Debtors and for Gori.

37. The Defendants failed to fully disclose to the Debtors the possible effect of its joint representation of both Gori and the Debtors on the exercise of the Defendants' independent professional judgment on behalf of each of Gori and the Debtors.

38. BNR failed to obtain the Debtors' written consent to the joint representation of both the Debtors and Gori.

39. In or about March 2015, the Defendants, acting on instructions from Gori and Israilovici, provided legal services to Israilovici, Gori and the Debtors in connection with the transfer (the "Transfer") of substantially all of Debtors' assets to Israilovici, which occurred on or about April 1, 2015, was not made for any valid consideration, and at a time when the Debtors were insolvent.

40. Defendants represented Israilovici, Gori and the Debtors in connection with the Transfer without obtaining a valid conflict waiver from the Debtors and all parties.

5

COMPLAINT

Case: 16-53499    Doc# 204    Filed: 12/13/18    Entered: 12/13/18 16:46:49    Page 6 of 12

41. Prior to the Transfer, the Debtors owned valuable assets, including rights to scripts, film rights, options, intellectual property and other media rights ("Assets").

42. The Debtors' rights in the scripts include the recoupment of costs and expenditures associated with the development of the scripts. Typically when the scripts are developed and produced into films, these costs and expenditures are paid first.

43. The costs associated with Debtors' scripts, as shown on Debtors' books and records, were believed to be approximately $9 million. Proposed presentations prepared by the Debtors for outside investors, which were circulated in April 2015, valued Debtors' Assets at $9 million.

44. The Transfer was made at the instruction of Gori and in knowing violation of the TRO.

45. Defendants had knowledge of the TRO. Berlandi received a copy of it by email in January 2014. In subsequent emails copying Berlandi the TRO was discussed and explained, including the limitations it placed on transferring the Debtors' Assets.

46. Nevertheless, Defendants disregarded the TRO and orchestrated a transfer of substantially all of the Debtors' assets for no consideration to their other client, Israilovici, in order to personally benefit yet another of their clients, Gori. This was all possible because the Defendants failed to advise the Debtors at the outset of their joint engagement with Gori of the risks associated with such joint engagement, and obtained no waivers or consent as was required. Even if the Defendants had sought to obtain an appropriate waivers of the conflicting interests of the persons involved in the Transfer, the nature of the conflict between Gori, Israilovici and the Debtors at all relevant times would have made any waiver or consent improper and invalid. Among other reasons why the Defendants could not give independent advice to each of the clients they purported to represent in connection with the Transfer is that Israilovici has claimed that the consideration for the Transfer was the satisfaction of a loan he made to Gori which did not benefit the Debtors, but Defendants had received no consideration for being made a borrower in connection with the loan.

47. In 2014, CGUSA and Forward Pass, Inc. f/s/o Michael Mann ("Forward Pass") entered into an agreement dated June 26, 2014 "with respect to the motion picture project based on the book '*Ferrari*' written by Brook Yates" (the "Initial Ferrari Agreement").

48. After the April 1, 2015 transfer, based on his email correspondence, Berlandi evaluated and reviewed the Initial Ferrari Agreement and negotiated and drafted a second agreement on behalf of CGUSA with Forward Pass, which entered into that agreement, called the Exclusive Project Agreement, dated as of October 15, 2015 ("Second Ferrari Agreement").

49. The Second Ferrari Agreement was signed by Gori on behalf of CGUSA (at a time when Gori was prohibited from doing so by the TRO). The Second Ferrari Agreement recites that "all CGUSA's rights (and those of any related party) have been assigned to G&G including the option … granted by the Author giving CGUSA the exclusive rights of every kind and nature to the [Ferrari] Book …, including all motion picture rights … as well as all other rights in the [Ferrari] Project…."

50. The Second Ferrari Agreement purports to supersede the Initial Ferrari Agreement between CGUSA and Forward Pass, contains an acknowledgment and indemnity by CGUSA that G&G owns all rights related to the Ferrari Project and provides for payment of consideration to G&G.

51. No benefit or consideration flowed to the Debtors from the Second Ferrari Agreement. Further, Defendants represented both CGUSA and G&G in the Second Ferrari Agreement, in which the Debtors are adverse to G&G and giving up rights for no consideration. Defendants acted despite the existence of an unwaivable conflict between their clients and without even attempting to obtain their clients' informed consent and waiver.

52. In or about July and August 2016, shortly before judgment was entered in favor of Nous, Berlandi traveled to Los Angeles, California where he inspected files belonging to the Debtors that were held at the offices of Debtors' Los Angeles attorneys. Based on authority granted by Gori that was contrary to the Debtors' interests, Berlandi gave instructions in connection with the destruction of the Debtors' records regarding the Nous litigation matters.

7

Case: 16-53499    Doc# 204    Filed: 12/13/18    Entered: 12/13/18 16:46:49    Page 8 of 12

COMPLAINT

53. Defendants took multiple adverse actions when representing the Debtors regarding their rights and property after the transfer of all of the Debtors' assets. At this time, the TRO enjoining Gori's transfer of Debtors' property was still in effect. Additionally, the Transfer was limited to scripts, film rights, and contractual rights. It did not include business records or legal records of the Debtors.

54. Notwithstanding the actions described above, in a Declaration executed February 20, 2017, submitted before the Court in this case in opposition to a motion by the Debtors for a preliminary injunction, Berlandi claimed that he only represented the Debtors "from June 2013-February 2015."

55. Berlandi also claimed that "[s]ince approximately March 2015, when GC Companies' [Debtors'] portfolio of scripts was transferred to G&G Productions LLC ("G&G"), BNR has served as counsel to G&G." Berlandi admitted that while representing G&G, he obtained information about the assets of the Debtors from Niels Juul, Berlandi's "main point of contact" for the Debtors.

56. Berlandi's declaration that his representation of the Debtors ended in February 2015, was controverted by Israilovici, who said that Berlandi continued to represent the debtors after February 2015. Israilovici submitted a filing titled *Comments Of Gabriele Israilovici On The Employment Application Of Diamond McCarthy, LLP To Be Retained As Special Litigation Counsel*, filed January 30, 2018, Dkt No. 131, Case No. 16-53499. Israilovici stated there that in March 2015, Berlandi was engaged in a joint representation of the Debtors, Gori, and Israilovici in facilitating the transfer of assets from the Debtors.

57. Attached to the Comments submitted by Israilovici was a letter purportedly signed by Berlandi and Gori on or about March 9, 2015 that states that the Debtors are waiving the conflict in having Berlandi as counsel for both Israilovici and the Debtors in connection with the Transfer (the "Conflict Waiver"). Berlandi's Declaration of February 20, 2017 makes no mention of obtaining such a waiver.

58. The Debtors believe the Conflict Waiver was prepared long after the Transfer was consummated and is not a valid waiver.

59. The purported waiver letter, the authenticity of which is unestablished, simply further shows Defendants' conflict of interest and wrongdoing.

60. First, the "waiver" letter contradicts Berlandi's sworn declaration that his representation of the Debtors' ended in Februrary 2015 because the letter, purportedly written and signed by Berlandi in March 2015, claims that Berlandi remains counsel to the Debtors in March 2015 and is engaged in a joint representation.

61. Second, the "waiver" letter fails to disclose or waive the conflict arising from BNR's simultaneous representation of G&G Productions LLC, the ultimate transferee of the debtors' assets, an entity managed by Israilovici, and the entity that attempted to monetize the Debtors' assets after the transfer with Berlandi's assistance. Therefore, a full disclosure of the nature and extent of the conflict was not included.

62. Third, the "waiver" letter was not signed by a disinterested officer or director of the Debtors who could have waived the conflict with informed consent pursuant to Rules 1.7 and 1.13 of the New York Rules of Professional Conduct.

63. Fourth, the "waiver" letter falsely claims that BNR provided "little to no further legal advice" after August 2013 when in fact BNR's invoices reflect charges to the debtors for legal services performed in January, April, May, June, July, August, September, November, and December of 2014 and January of 2015 for more fees than BNR charged through August 2013. Nor does the waiver letter (or any other communication that has been located by the Debtors) advise the debtors of the harm of agreeing to transfer all of their assets to Israilovici for $1.00 in a fraudulent transfer.

64. Even if there was full disclosure related to the conflict of interest and issues created by the dual representation, no disinterested lawyer would believe that Berlandi could competently represent the interests of both the Debtors and G&G.

65. Berlandi purported to terminate his representation of the Debtors through the invalid March 2015 waiver, however, Berlandi appears to have acted on behalf of the Debtors, though against their interests, on multiple occasions in 2015 and 2016.

66. Furthermore, Berlandi's February 20, 2017 Declaration revealed confidential information regarding the Debtors' Assets in an attempt to discredit and diminish the value of the Assets.

67. Specifically, Berlandi claimed that, based on information obtained while counsel to the Debtors, many of the Debtors' rights in various scripts were in fact worthless because the Debtors had dubious title to those scripts or that Debtors lacked the ability to substantiate their chain of title. These damaging public statements disclosed confidential work product and opinions that were formed while acting as Debtors' counsel and Debtors did not consent to their disclosure.

68. Ultimately, these acts harmed Debtors by diminishing the value of their Assets and materially hurting their prospects of marketing and selling the Assets for their fair market value.

## FIRST CLAIM FOR RELIEF

### Legal Malpractice

69. Debtors repeat and reallege each of the prior allegations in this Complaint as set forth above.

70. Defendants failed to exercise the degree of care, skill, and diligence commonly possessed and exercised by an ordinary attorney or law firm within the legal community by, among other things, participating in the transfer of Debtors' assets for no consideration and without advising the Debtors that such a transfer was against their interests, revealing confidential information learned while acting as counsel to Debtors, and expressing opinions and taking other actions that were contrary to the Debtors' interest.

71. Defendants' negligence proximately caused damage to the Debtors by, among other things, causing Debtors' assets to be fraudulently transferred, causing the value of the Assets to be appreciably diminished through revealing confidential information and/or offering opinions as to their value that were contrary to the Debtors' interests.. The loss in value of the Assets and increased difficulty in future marketing and selling of the Assets for their fair market value would not have occurred had Defendants not acted in the ways alleged herein.

## SECOND CLAIM FOR RELIEF

### Breach of Fiduciary Duty

72. Debtors repeat and reallege each of the prior allegations in this Complaint as set forth above.

73. Defendants and Debtors entered into an attorney-client relationship, thereby establishing a fiduciary relationship. Defendants' fiduciary duties continued beyond the termination of the attorney-client relationship.

74. As attorney for the Debtors, Berlandi, and BNR owed the Debtors a duty of loyalty and of confidentiality, to act in the best interest of the Debtors, and to preserve the confidentiality of the Debtors' information.

75. Defendants engaged in misconduct during the attorney-client relationship and thereafter by breaching their duty of loyalty to the Debtors through, among other things, their acts on behalf of Gori, Israilovici and G&G to the direct detriment of Debtors. Defendants further breached their fiduciary duties by knowingly revealing client confidences about the Assets formed during the attorney-client relationship without the consent of Debtors, thereby diminishing the value and marketability of Debtors' Assets. As a direct result, Debtors have been harmed by the reduction in value of their Assets and in their reduced ability to market and sell the Assets.

## PRAYER FOR RELIEF

WHEREFORE, the Debtors respectfully request the following relief:

A. An award of damages;

B. Return of all fees paid by the Debtors to BNR;

C. Pre-judgment interest; and

D. Such other and further relief as the Court may deem just and proper.

Dated: December 13, 2018            DIAMOND McCARTHY LLP

*/s/ Christopher D. Sullivan*
Christopher D. Sullivan,
Special Counsel for Plaintiffs
CECCHI GORI PICTURES and CECCHI GORI USA, INC.